**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No.  09-cv-00051-LTB

KAREN MATTHEWS,

            Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

            Defendant.
_____

**ORDER**
_____

        Plaintiff, Karen Matthews, appeals the final decision of Michael J. Astrue, Commissioner

of Social Security, denying her application for Social Security Disability benefits.  Following a

March 6, 2008, hearing, the Administrative Law Judge ("ALJ") issued an unfavorable decision

on June 2, 2008.  The Appeals Council denied Plaintiff's request for review of the ALJ's

decision, thus making it the Commissioner's final decision.  Plaintiff has exhausted her

administrative remedies and this case is ripe for judicial review.  Jurisdiction is proper under 42

U.S.C. § 405(g).  Oral argument would not materially assist the determination of this appeal.

After consideration of the parties' briefs and the administrative record, and for the reasons set

forth below, I REVERSE and REMAND.

**I.  BACKGROUND**

        Plaintiff was born on November 4, 1959, and was forty-eight years of age at the time of

the hearing.  [Administrative Record "AR" 53].  She has a GED education.  [AR 23].  Her past

work history includes employment as an animal shelter clerk, animal caretaker, restaurant cook,

cashier-checker, and bookkeeper. [AR 30].  Plaintiff's alleged onset date is February 2, 2006, the last day she worked. [AR 72].

### A.  Plaintiff's Medical History

Plaintiff reports a fractured back injury occurring in 2000 and another fractured back injury occurring at an unspecified date. [AR 218–19].  On August 25, 2005, Plaintiff's primary care physician, Dr. Chesnut, noted Plaintiff "has pain in her back secondary to the fractures and also pain in her right knee.  The patient is taking too much medication in the form of Vicodin for her." [AR 218].  Plaintiff was taking other pain medications at that time as well, including Neurontin, Oxycontin, and Duradrin. [AR 218].  Plaintiff reported additional back pain to Dr. Chesnut on September 1, 2005, and was prescribed Oxycontin.  [AR 215].  On September 20, 2005, Plaintiff reported the Oxycontin relieved her back pain markedly, but she continued to suffer leg pain. [AR 213].  Dr. Chesnut assessed unspecified backache and refilled Plaintiff's Oxycontin prescription. [AR 213].  On May 2, 2006, Dr. Chesnut noted Plaintiff's history of "rather severe and chronic back pain." [AR 187].  Plaintiff continued to complain of back pain and was prescribed Oxycontin, Duragesic, and Darvocet through June 2006. [AR 182–211].

On March 2, 2006, a review of a recent MRI showed right side neural foramina narrowing with pressure on the nerve at L5-S1. [AR 191].  Review of MRI exams done previously in 2005 and 2003 showed no significant changes. [AR 191].  Plaintiff was referred to physical therapy. [AR 191].

Plaintiff underwent brain surgery on March 29, 2006, for longstanding occipital headaches. [AR 133].  Plaintiff was released to work on May 11, 2006, with a limitation of no lifting or straining over ten pounds for three months. [AR 188].  Plaintiff reported to Dr. Chesnut

that the brain surgery relieved her headaches. [AR 189].

On June 13, 2006, a neurosurgeon, Dr. Zielinski, stated Plaintiff was unable to work due to lower back impairment beginning May 3, 2006. [AR 180].  Dr. Zielinski noted Plaintiff was scheduled for lumbar surgery on July 18, 2006, and that—for an undetermined period of up to one year following surgery—Plaintiff would be restricted to no bending, lifting, or twisting, and no standing for long periods of time. [AR 181].  Plaintiff underwent a lumbar instrumented fusion surgery on July 18, 2006. [AR 241–43].  Dr. Zielinski diagnosed "a severely degenerated disk at the L5–S1 region" and "spondylosis of grade 1." [AR 241].  Plaintiff was discharged on July 25, 2006. [AR 240].  Dr. Zielinski noted Plaintiff "did well post-surgically, had physical therapy, and with significant work with physical therapy was able to ambulate well." [AR 240].

Three weeks after her surgery, Plaintiff reported to Dr. Chesnut that she felt like she was improved, but it was hard to tell so close to the surgery. [AR 305].  On September 22, 2006, Plaintiff reported to Dr. Chesnut that she had fallen recently and was experiencing increased back pain. [AR 302].  On October 3, 2006, Dr. Chesnut advised Plaintiff not to lift a gallon of milk—which Dr. Chesnut believed to weigh between six and eight pounds—or to flex at the waist more than 45 percent. [AR 301].  On October 31, 2006, Plaintiff told Dr. Chesnut that she continued "to have her usual amount of back pain," but she was "gradually getting better." [AR 299].  On November 15, 2006, Plaintiff reported increased pain, which Dr. Chesnut attributed somewhat to symptoms of withdrawal from "cutting down on the Oxycontin." [AR 297].  Plaintiff reported her pain was getting "slightly better" on November 28, 2006, but reported on December 19, 2006, that it was increasing. [AR 293–95].  On January 1, 2007, Plaintiff reported marked improvement in her back pain, and Dr. Zielinski informed Dr. Chesnut that Plaintiff was

"coming along ok with her back, following surgery." [AR 291].  On February 6, 2007, Plaintiff

reported she was "getting along very well." [AR 289].  On April 3, 2007, Plaintiff reported she

was "getting progressively better." [AR 285].

Plaintiff began treatment with Dr. Zoschke in May 30, 2007.  On that date, Plaintiff

reported she could do walking and cooking, make her bed, and do her own activities of daily

living. [AR 325].  She reported being unable to vacuum because of pain in her back. [AR 325].

She reported pain limited her to being able to stand for about ten minutes at a time, sit for thirty

to forty-five minutes at a time, lay down for six to seven hours at a time, walk for fifteen

minutes, and squat or bend for a minute or two up to twice an hour. [AR 325].  She also reported

tiring easily. [AR 325].  Dr. Zoschke opined that Plaintiff "would not be able to work at any job

currently, secondary to need for retraining." [AR 326].  Dr. Zoschke further opined that Plaintiff

"could pursue job retraining and potentially work at a job such as a secretarial position where

she could do work that is mainly seated with occasional breaks for standing for short periods and

where she could get up and down rather frequently as needed." [AR 326].  On June 13, 2007,

Plaintiff reported having trouble with her back and legs whenever she moved too much. [AR

323].  On November 2, 2007, Plaintiff reported getting exercise more regularly. [AR 314].

Plaintiff reported getting a treadmill, and "plans on using that during the winter when it is more

difficult for her to walk outside." [AR 314].  Dr. Zoschke noted Plaintiff's back pain "seems to

be better controlled than previously." [AR 314].

## B.  Disability Forms

Plaintiff was examined by a consultative physician, Dr. Kassel, on October 7, 2006. [AR

256–60].  Dr. Kassel opined: "The claimant can be expected to stand and walk for two hours

maximum during an eight-hour workday.  This is only when released by her orthopedic surgeon. . . . The claimant can be expected to sit for six hours in an eight hour workday.  She is limited secondary to being released by her orthopedic surgeon.  After this she could perform most work duties in the sitting position. . . . The claimant cannot be expected to lift or carry any weight. . . . She would be restricted to perform no bending, stooping, or crouching." [AR 260].

On November 20, 2006, Dr. Chesnut completed a disability form. [AR 281–83].  Dr. Chesnut indicated Plaintiff could lift and carry a maximum of five pounds for up to one third of an eight hour work day, could sit a maximum of three hours in an eight hour workday, could stand a maximum of five hours in an eight hour workday, could never crawl or kneel, and could stoop and squat "rarely"—which was defined as less than ten times per day. [AR 281–82].  Dr. Chesnut also indicated Plaintiff would be required to lay down for two hours during each eight hour workday and that Plaintiff's medications caused her drowsiness. [AR 281–82].

On May 30, 2007, Dr. Zoschke filled out a Colorado Med-9 form indicating Plaintiff was "disabled to the extent [she was] unable to work at any job for a total period of six (6) or more months due to a physical or mental impairment that is disabling." [AR 310].  Dr. Zoschke indicated the expected length of disability was six to eight months. [AR 311].  Dr. Zoschke also indicated Plaintiff would "need retraining to be able to do a sit-down job with frequent breaks for standing, little or no stooping, no climbing ladders, little or no bending, occasional walking okay" and would likely be limited to less than twenty hours of work per week due to increased fatigability. [AR 311].

On February 1, 2008, Dr. Zoschke also filled out a disability form similar to the one filled out by Dr. Chesnut. [AR 307–09].  Dr. Zoschke assessed largely the same limitations, with the

only difference being a limitation to rare crawling and kneeling. [AR 308].  Dr. Zoschke opined

that Plaintiff was incapable of working eight hours per day five days per week, and further

opined that Plaintiff's restrictions would have been in effect "at least since 2006 when she had

her surgery." [AR 309].

<u>C.  Disability Hearing</u>

At Plaintiff's hearing on March 6, 2008, Plaintiff testified she quit working on January

31, 2006, because she broke her back. [AR 23].  Plaintiff testified she had brain surgery in March

2006, and back surgery in July 2006 which included fusion and bone grafts. [AR 23–24].

Plaintiff testified the back surgery did not improve her leg and back pain, but she received partial

relief with pain medication. [AR 24–25].  Plaintiff testified she could sit for thirty minutes at a

time and stand for forty-five minutes at a time. [AR 25].  Plaintiff testified she walked with a

cane that was prescribed by Dr. Zielinski. [AR 25–26].  Plaintiff testified she could not stoop or

crouch, could lift five pounds, and had to lay down for two hours per day because of leg and

back pain and tiredness. [AR 26].  Plaintiff testified she could sit a total of three hours a day and

stand or walk a total of five hours a day, but not at one given time. [AR 28].

The ALJ then questioned a vocational expert ("VE").  The VE testified that a person of

the same age, education, and work background as Plaintiff—and who was "limited to an

exertional level in a reduced range of sedentary, that reduction being lift or carry only five

pounds, with a sit/stand option, only occasionally bending, squatting, kneeling, and no foot or

leg controls"—would be able to perform Plaintiff's previous work as a bookkeeper. [AR 30].

Such a person could also work as a credit clerk, order clerk, or call out operator. [AR 31].  The

VE further testified that such a person would not be able to perform work if that person was

required to "lay down and be off task" for up to two hours per day. [AR 31].

### D.  ALJ Ruling

In his ruling, the ALJ applied the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520.  Applying the first step, the ALJ determined Plaintiff had not performed substantial gainful activity since her onset date of February 2, 2006. [AR 12].  Applying the second step, the ALJ determined Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine. [AR 12].  The ALJ also determined Plaintiff had the following nonsevere impairments: disc disease of the thoracic and cervical spine, affective disorder, and headaches. [AR 12].  Applying the third step, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [AR 12–13].

Applying the fourth step, the ALJ determined Plaintiff was able to perform past relevant work as a bookkeeper. [AR 17].  In reaching his conclusion at step four, the ALJ determined Plaintiff had the residual functional capacity to "perform a range of sedentary work. Specifically, the performance of sedentary work is reduced by the ability to lift or carry only 5 pounds; to have the option to alternate between sitting and standing at will; with occasional bending, squatting, or kneeling; and no operation of foot or leg controls." [AR 13].

In making this finding, the ALJ reviewed Plaintiff's medical records showing a history of back pain beginning in late 2005. [AR 13].  The ALJ noted that—although Plaintiff stated at the hearing that prescription pain medication did not "work much" to improve her symptoms—Plaintiff's records showed the medication was "quite effective in controlling [her] pain symptoms." [AR 16].  The ALJ found that Plaintiff's statements to Dr. Kassel that she

enjoyed doing crossword puzzles, crocheting, and watching television, and that she was "feeling well" and happy on an average day were "in direct conflict to how [she] portrayed herself at the hearing." [AR 16].  The ALJ found that—while Plaintiff "may have inferred that her daily activities are quite limited"—her allegations were not "strong evidence" of disability because they could not be objectively verified, nor could they be attributed to her medical condition "in view of the relatively weak medical evidence and other factors." [AR 17].  The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment." [AR 16].

The ALJ "agree[d] with the opinion of the consulting source, Dr. Kassel," who limited Plaintiff to six hours of sitting and two hours of standing or walking per day, and opined that Plaintiff could perform "most work duties in the seated position" after surgical recovery. [AR 17].  The ALJ found Dr. Kassel's other limitations "were based on the fact that she was still recovering from surgery." [AR 17].  The ALJ found Dr. Zoschke's February 2008 opinion that Plaintiff would be required to lay down for two hours per day had "no basis in the actual treatment notes, which document ongoing improvements in her condition and back pain since surgery." [AR 17].  The ALJ also found Dr. Zoschke's assessed limitations in February 2008 "contraindicative to the assessment submitted by her in May 2007, wherein she indicated Plaintiff would be disabled for a period lasting 6–8 months." [AR 17].  The ALJ found Dr. Chesnut's similar opinion "far more reasonable as it was completed only three months post operatively." [AR 17].

8

As the ALJ found Plaintiff was not disabled at step four, it was unnecessary to proceed to step five: determining whether the claimant was able to perform other work that exists in significant numbers in the national economy.  *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) ("If at any point in the process the Secretary finds that a person is disabled or not disabled, the review ends.").  Nonetheless, the ALJ determined that a person with Plaintiff's age, education, work experience, and residual functional capacity would be able to perform the jobs of credit clerk, order clerk, and call-out operator. [AR 18].  The ALJ then concluded that Plaintiff was not under a disability as defined in the Social Security Act from February 2, 2006, through the date of the decision on June 2, 2008. [AR 19].

## II. STANDARD OF REVIEW

My review in a Social Security appeal is limited to whether the final decision is supported by substantial evidence and the correct legal standards.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Although I do not reweigh the evidence or try the issues *de novo*, I must examine the record as a whole—including anything that may undercut or detract from the ALJ's findings—in order to determine if the substantiality test has been met.  *Id*. at 1262. Evidence is substantial if it amounts to "more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).  Evidence is not substantial if it is overwhelmed by other evidence in the record, or constitutes a mere conclusion.  *See Grogan*, 399 F.3d at 1261–62.  If the ALJ's decision is not supported by substantial evidence, or if the ALJ failed to provide a sufficiently clear basis from which I may determine the appropriate legal standards were applied, I may reverse or remand.  *See Washington v. Shalala*, 37 F.3d 1437, 1440 (10th

Cir. 1994).

### III.  ISSUES RAISED

Plaintiff raises five issues on appeal: (1) the ALJ failed to express all elements of his RFC finding on a function-by-function basis; (2) the ALJ did not properly weigh the conflicting medical opinions of Plaintiff's RFC; (3) the ALJ's RFC finding was not supported by substantial evidence; (4) the ALJ improperly concluded that Plaintiff's condition had improved and improperly quantified that improvement; and (5) the ALJ improperly evaluated Plaintiff's testimony.  Because there is some overlap between issues two, three, and four, I address all three together in Part V below.  I address the other issues separately.

### IV.  THE ALJ FAILED TO EXPRESS ALL ELEMENTS OF HIS RFC FINDING ON A FUNCTION-BY-FUNCTION BASIS

The ALJ found Plaintiff had "the residual functional capacity to perform a range of sedentary work.  Specifically, the performance of sedentary work is reduced by the ability to lift or carry only five pounds; to have the option to alternate between sitting or standing at will; with occasional bending squatting or kneeling, and no operation of foot or leg controls." [AR 13]. Plaintiff argues the RFC assessment was not based upon the correct legal standards because it failed to consider all of Plaintiff's limitations on a function-by-function basis.  I agree.

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  Social Security Ruling 96-8p, 1996 WL 374184, at *1 (1996) ("SSR 96-8p").  The function-by-function assessment requires the ALJ to address "an

individual's limitations and restrictions of physical strength and defines the individual's

remaining abilities to perform each of seven strength demands: sitting, standing, walking, lifting,

carrying, pushing, and pulling.  Each function must be considered separately . . . even if the final

RFC assessment will combine activities. . . . It is especially important that adjudicators consider

the capacities separately when deciding whether an individual can do past relevant work."  SSR

96-8p, 1996 WL 374184, at * 5.  Social Security rules further state that "a sedentary job is

defined as one that involves sitting."  Social Security Ruling 96-9p, 1996 WL 374185, at *3

(1996) ("SSR 96-9p").  Where a claimant is unable to "remain in a seated position for

approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an

afternoon break at approximately 2-hour intervals"—a limitation that is consistent with a

limitation to sitting or standing at will—the claimant cannot perform a full range of sedentary

work.  SSR 96-9p, at *6.

      The ALJ—although he found Plaintiff could perform jobs allowing "the option to sit or

stand at will"—did not make findings regarding Plaintiff's limitations in the areas of walking,

pushing, or pulling, the length of time Plaintiff could sit or stand in a day, the length of time

Plaintiff could remain continuously seated or standing, the frequency with which she would need

to alternate between sitting or standing, or any of the other specific requirements of SSR 96-9p.

As noted in SSR 96-9p, the range of available work for a claimant—such as Plaintiff—who

cannot perform a full range of sedentary work "will depend on the facts in the case record, such

as the frequency to alternate sitting and standing and the length of time needed to stand.  The

RFC assessment must be specific as to the frequency of the individual's need to alternate sitting

and standing."  SSR 96-9p, at *7.  Accordingly, the failure of the ALJ to make a specific

assessment of Plaintiff's abilities on a function-by-function basis was error.  *See Bowman v. Astrue*, 511 F.3d 1270, 1272–73 (10th Cir. 2008); *Maynard v. Astrue*, 276 F. App'x 726, 731 (10th Cir. 2007).

The ALJ's error is compounded here because he found Plaintiff could perform sedentary work reduced by "the option to alternate between sitting and standing at will" but did not present this limitation to the VE, instead including only the shorthand: "sit/stand option." [AR 30]. Although the Commissioner now argues the ALJ's question including a "sit/stand option" could "fair[ly] and obvious[ly]" be interpreted as a limitation to being able to sit or stand at will, such a "post-hoc rationale is improper because it usurps the agency's functioning of weighing and balancing the evidence in the first instance."  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).  Even if the "sit/stand option" were interpreted to mean "the option to alternate between sitting and standing at will," the Tenth Circuit teaches that such a generalization is insufficient to meet the requirements of SSR 96-9p.  *See Maynard*, 276 F. App'x at 731 (holding a hypothetical that included a general "sit-stand option," but "provided no specifics to the VE concerning the frequency of any need [the claimant] may have to alternate sitting and standing and the length of time needed to stand" did not comply with SSR 96-9p, and, accordingly, the VE's response to such a question did not amount to substantial evidence of nondisability).

## V.  THE ALJ DID NOT PROPERLY WEIGHT THE CONFLICTING MEDICAL OPINIONS OF PLAINTIFF'S RFC

Plaintiff contends the ALJ failed to apply the correct legal standards in evaluating the opinions of her treating physicians.  Specifically, she contends the ALJ failed to properly weigh their opinions on her ability to work and to provide specific, legitimate reasons for rejecting

them.  I agree.

A.  Factors the ALJ must consider when weighing the opinion of a treating physician

The weight given a treating physician's opinion is determined using a two step inquiry.

First, the ALJ must determine whether to give the treating physician's opinion controlling

weight.  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  Second, if the ALJ

determines the treating physician's opinion is not entitled to controlling weight, the ALJ must

then determine how much weight to give the opinion by applying the six factors provided in 20

C.F.R. §§ 404.1527 and 416.927.  *See Watkins*, 350 F.3d at 1300.  Unless good cause is shown to

the contrary, a treating physician's opinion should be given substantial weight.  *Byron v.*

*Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The first step of the treating-physician inquiry includes a sequential analysis of two

factors.  *Watkins*, 350 F.3d at 1300; 20 C.F.R. § 404.1527(d)(2).  Applying the first factor, the

ALJ must determine if the treating physician's opinion is well-supported by medically

acceptable clinical and laboratory diagnostic techniques.  *Watkins*, 350 F.3d at 1300.  If the

answer to this question is "yes," the ALJ applies the second factor and must determine if the

opinion is consistent with other substantial evidence on the record.  *Id*.  If the answer to this

question is also "yes," the opinion "must be given controlling weight; *i.e.*, it must be adopted."

*See* Social Security Ruling 96-2p, 1996 WL 374188, at *1 ("SSR 96-2p").

If the answer to either question is "no," the ALJ must proceed to the second step.  A

treating physician's medical opinion is entitled to deference and must be weighed using the six

factors provided in 20 C.F.R. §§ 404.1527 and 416.927.  *Watkins*, 350 F.3d at 1300.  These

factors are: (1) the length of the treatment relationship and the frequency of the examination; (2)

the nature and extent of the treatment relationship, including the treatment provided and the kind

of examination or testing performed; (3) the degree to which the physician's opinion is supported

by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether

or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other

factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at

1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).  Social Security

Agency rules make clear that an ALJ must articulate his reasoning with specific and legitimate

findings at each step of the inquiry so that a subsequent reviewing court can determine the

weight accorded to each opinion and the reasons for that weight. *Id.* (citing SSR 96-2p, 1996

WL 374188, at *5).  A reviewing court will not presume the ALJ applied the correct legal

standards absent this analysis. *Id.*

### B.  The ALJ did not properly apply the two step inquiry

The ALJ's discussion of the opinions of Plaintiff's treating physicians is curiously brief.

The ALJ does not, for example, mention—let alone note the weight given—Dr. Zielinski's June

13, 2006, opinion that Plaintiff was unable to work due to lower back impairment beginning May

3, 2006 [AR 180–81], nor the opinion of Plaintiff's brain surgeon that Plaintiff could not work

from March 29, 2006, through May 11, 2006, and even then with limitations [AR 188].  The ALJ

similarly provides no mention nor analysis of the weight given the May 30, 2007, opinions of Dr.

Zoschke that Plaintiff would be unable to work more than twenty hours per week due to

increased fatigability [AR 310–11] or the opinion that Plaintiff "would not be able to work at any

job currently" [AR 326].  Indeed, the only treating physician's opinion weighed—and partially

rejected—by the ALJ was the February 2008 opinion of Dr. Zoschke.

Assuming, *arguendo*, that the ALJ properly discounted Dr. Zoschke's February 2008 opinion—an assumption that is not supported by the ALJ's sparse consideration of the relevant questions as presented in *Watkins*—a review of the medical opinions not addressed by the ALJ shows Plaintiff's treating physicians believed she was disabled at least from the period of March 29, 2006, through May 30, 2007.  This fourteen month period forms a sufficient time frame to allow an award of benefits.  *See* 42 U.S.C. § 423.  When including Dr. Zoschke's May 30, 2007, opinion that the period of disability would likely last an additional six to eight months—an opinion that should not have been disregarded absent evidence of medical improvement, *see* 20 C.F.R. § 404.1594—the period of disability clearly extends well over the minimum one year. *See Shepherd v. Apfel*, 184 F.3d 1196, 1201–02 (10th Cir. 1999).  Absent an appropriate discussion of the basis for rejecting these opinions, I cannot presume the ALJ applied the correct legal standards.  *See Watkins*, 350 F.3d at 1301.  In light of the ALJ's failure to properly weigh the opinions of Plaintiff's treating physicians, I likewise cannot presume the ALJ's RFC finding—which was inconsistent with the medical opinion evidence—was supported by substantial evidence and the correct legal standards.  *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001).  Remand on these issues is therefore required.

The ALJ's failure to properly weigh the opinions of Plaintiff's treating physicians is exacerbated by additional factual errors that should be addressed on remand.  For example, in reaching his decision on Plaintiff's RFC, the ALJ stated: "the undersigned agrees with the opinion of the consulting source, Dr. Kassel [a state consulting physician], who found the claimant can sit for about 6 hours during an entire 8-hour workday, and stand/walk for at least 2 hours during the same time frame." [AR 17].  Dr. Kassel, however, did not opine that Plaintiff

15

could "stand/walk for *at least* 2 hours," but rather opined that Plaintiff could "stand and walk for two hours *maximum* during an eight-hour workday" (emphasis added).  [AR 260].

Similarly—but even more troubling—the ALJ stated Dr. Kassel's restrictions were "based on the fact that she was still recovering from surgery." [AR 17].  Dr. Kassel, however, did not assign restrictions for the period in which she was "still recovering from surgery," but rather explicitly opined that Plaintiff could be expected to work with restrictions "only when released by her orthopedic surgeon." [AR 260].  As the medical record appears to include no reference to a date when Plaintiff was "released by her orthopedic surgeon," the ALJ's decision to accord controlling weight to Dr. Kassel's opinion was not based upon substantial evidence.  *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *Shepherd*, 184 F.3d at 1201–02.

"The ALJ's task is to examine the [nontreating] physicians' reports to see if they outweigh the treating physician's report, not the other way around."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  On remand, should the ALJ determine that the opinions of Plaintiff's treating physicians should not be given controlling weight, the ALJ must then determine the appropriate weight in light of the six *Watkins* factors.  *See Watkins*, *supra*, 350 F.3d at 1300.  If the ALJ determines the medical record is ambiguous or conflicting or otherwise inadequate to determine Plaintiff's disability—keeping in mind that an ALJ "is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability"—the ALJ should contact Plaintiff's treating physicians for additional information, as required by 20 C.F.R. § 404.1512.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083–84 (10th Cir. 2004).  The ALJ may reject the opinions of Plaintiff's treating physicians "only on the basis

of contradictory medical evidence and not due to his or her own credibility judgments,

speculation or lay opinion." *McGoffin*, 288 F.3d at 1252.

## VI.  THE ALJ IMPROPERLY EVALUATED PLAINTIFF'S
## SUBJECTIVE COMPLAINTS

When considering what weight is to be given to a claimant's subjective complaints, the

ALJ must initially inquire whether the claimant has medically determinable impairments that

could reasonably be expected to produce the alleged symptoms.  *See* 20 C.F.R. § 404.1529.  The

ALJ found Plaintiff had such medically determinable impairments.  [AR 16].

Once such inquiry has been made, the ALJ must then evaluate the intensity and

persistence of the symptoms in order to determine how the symptoms limit the capacity for

work.  *See id.*  Such an inquiry "requires the adjudicator to make a finding about the credibility

of the individual's statements about the symptom(s) and its functional effects."  Social Security

Ruling 96-7p, 1996 WL 374186, at *1 ("SSR 96-7p").  The ALJ determined that Plaintiff's

subjective complaints of pain and fatigue were not entirely credible. [AR 16].

### A.  Factors the ALJ must consider when making a credibility determination

"In determining the credibility of the individual's statements, the adjudicator must

consider the entire case record, including the individual's own statements about symptoms,

statements and other information provided by treating or examining physicians . . . and any other

relevant evidence in the case record.  An individual's statements about the intensity and

persistence of pain or other symptoms or about the effect the symptoms have on his or her ability

to work may not be disregarded solely because they are not substantiated by objective medical

evidence."  SSR 96-7p, 1996 WL 374186, at *1.  "The reasons for the credibility finding must be

grounded in the evidence and articulated in the determination or decision." *Id*. at *4.

The ALJ must consider all of the available evidence, including the claimant's subjective complaints. *See id.* at *2–3. He should give "careful consideration" to the "location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; type, dosage, effectiveness and side effects of any medication; treatment, other than medication, for pain relief; and the claimant's daily activities." *Hamby v. Astrue*, 260 F. App'x 108, 113 (10th Cir. 2008) (citing 20 C.F.R. § 404.1529(c)(3)) (internal formatting omitted). The ALJ should consider the degree to which the claimant's statements are consistent with the medical signs, laboratory findings, and medical history, and the degree to which the claimant's statements made in connection with her disability claim are consistent with the statements made to medical providers. *See* SSR 96-7p, 1996 WL 374186, at *5–6.

The ALJ should also take into consideration whether manifestations of the complained-of symptoms have been observed by the claimant's physicians or others. *See id.* In so doing, the ALJ must consider the claimant's entire medical treatment history:

> In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense and persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements. Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

*Id*. at *7. On the other hand:

> the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or

18

> records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id.* The ALJ should consider whether the claimant was able to afford the recommended treatment, and whether the claimant had "been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual." *Id.* at *8.

### B.  The ALJ did not base his credibility determination on substantial evidence

When considering Plaintiff's subjective complaints, the ALJ reviewed the medical record and found Plaintiff's statements concerning the intensity, persistence, and limiting effects of her pain were not credible. When the ALJ makes a credibility determination—as the ALJ did here—such a determination will not be overturned on review so long as it is based on substantial evidence and correct legal standards. *See Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).

The ALJ considered Plaintiff's credibility as part of his residual functional capacity determination at step four. The ALJ based his determination on two factors: "First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." [AR 17]. Looking at the first factor, I initially note that Social Security rules

explicitly state: "An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."  SSR 96-7p, 1996 WL 374186, at *1.  Moreover, Plaintiff's testimony concerning her limited daily activities is consistent with the opinions of her treating physicians and with her medical treatment—including back surgery, which certainly is objectively verifiable—over a period of several years.

Turning to the second factor, the ALJ did not specify the non-medical "other reasons" to which he attributed Plaintiff's limited daily activities.  This was error.  Social Security rules state: "The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision."  SSR 96-7p, 1996 WL 374186, at *4.  Further—as the ALJ did not take testimony from any medical experts at the hearing—to the extent the ALJ found Plaintiff's complaints to be attributed to "other reasons," I am left to conclude the ALJ expressed this medical opinion based on his layperson's expertise.  *See McGoffin*, *supra*, 288 F.3d at 1252; 20 C.F.R. § 404.1512(e).  Such a "conclusion in the guise of findings" is not based on substantial evidence and correct legal standards and cannot stand.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

The ALJ similarly did not specify the "relatively weak medical evidence and other factors" that informed his credibility determination, but it seems unlikely that the ALJ could have reached such a conclusion based on "careful consideration" of the record before him.  As SSR 96-7p makes clear, "the adjudicator must consider the *entire case record*" when making a credibility determination and must consider the degree to which the claimant's statements made

in connection with her disability claim are consistent with the statements made to medical providers.  *See* SSR 96-7p, 1996 WL 374186, at *1, 5–6 (emphasis added).  Plaintiff's medical history includes extensive documentation of her back pain and treatment with surgery, physical therapy, and powerful narcotics.  Although Plaintiff's treating physicians had concerns regarding Plaintiff's opiate dependence, there are no indications in Plaintiff's record than any of her doctors believed Plaintiff's complaints to be incredible or overstated.  Indeed, even the state consultative physician, Dr. Kassel, noted: "The claimant does appear to have consistent history and physical findings for this low back pain." [AR 260].  The ALJ's conclusory statements disregarding this uncontradicted information, therefore, are not "grounded in the evidence and articulated in the determination or decision."  *See* SSR 96-7p, 1996 WL 374186, at *4.

In addition, the ALJ's opinion does not even mention many of the factors required under SSR 96-7p when making a credibility determination regarding a claimant's subjective complaints.  For example, the ALJ did not take into account that Plaintiff has persistently attempted to obtain relief of her pain and other symptoms for several years, has tried a variety of different therapies, has reported increased pain when her medication dosages were reduced, has reported side effects of tiredness and fatigue consistent with those expected for a person on her medications, has expressed her complaints and concerns to her physicians with great frequency, has seen specialists, has undergone various medical tests, reported tiring easily to her doctors, and is limited in her daily activities.  The ALJ likewise did not consider the important SSR 96-7p evidence showing that Plaintiff's subjective complaints were observed by her physicians and others numerous times.  This too is grounds for reversal.  *See Hamby*, 260 F. App'x at 113.  On remand, the ALJ must consider Plaintiff's ability to work in light of the whole record, not the

21

"isolated bits of evidence culled to support a specific conclusion" relied upon here. *See Stewart v. Chater*, 993 F. Supp. 809, 816 (D. Colo. 1998). Further, the ALJ should consider and address the factors laid out in SSR 96-7p and 20 C.F.R. § 404.1529. *See Hamby*, 260 F. App'x at 113.

## VII.  CONCLUSION

"When a decision of the Secretary is reversed on appeal, it is within the court's discretion to remand either for further administrative proceedings or for an immediate award of benefits." *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). Some of the relevant factors the Court considers when exercising this discretion include the length of time the matter has been pending and whether or not, given the available evidence, remand for additional fact-finding would serve any useful purpose or would merely delay the receipt of benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

A review of the available evidence suggests that Plaintiff was disabled for at least the time period between March 26, 2006, and May 30, 2007. It is not clear, however, when—if ever—Plaintiff achieved a level of medical improvement that would allow her to return to work, or what restrictions Plaintiff would be under if she were so allowed. In light of the ALJ's failure to properly make an RFC finding, the record is devoid of vocational evidence showing whether Plaintiff—if she is able to work at all—could return to previous work or find work that exists in significant numbers.

Accordingly, it is ORDERED that the June 2, 2008, administrative decision in this matter is REVERSED and REMANDED to the Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion.

Dated: September   24  , 2009.

BY THE COURT:

   s/Lewis T. Babcock
Lewis T. Babcock, Judge